**Sandra ROVIRA, individually and as executor of the Estate of Marjorie Forlini, Frank Morales and Alfred Morales, Plaintiffs,**

v.

**AT & T, Defendant.**

**No. 90 Civ. 5486 (RPP).**

United States District Court, S.D. New York.

March 25, 1993.

Beldock Levine & Hoffman by Lee F. Bantle, New York City, Lambda Legal Defense & Education Fund, Inc. by Paula Ettelbrick, New York City, for plaintiffs.

Townley & Updike by Daniel A. Rizzi, New York City, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action for declaratory relief and damages alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs allege that Defendant American Telegraph & Telephone Company ("AT & T"), in its administration of the AT & T Management Pension Plan (the "Plan"), discriminates against its employees on the basis of marital status and sexual orientation in determining beneficiary eligibility for Sickness Death Benefits under the Plan. Defendant AT & T moves for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, and Plaintiffs cross move for partial summary judgment. For the reasons set forth below, Defendant's motion for summary judgment is granted, and Plaintiffs' motion for partial summary judgment is denied.

## BACKGROUND

### I. The Plaintiffs

Marjorie Forlini, an AT & T employee, died of cancer in 1988. Plaintiff Sandra Rovira was her gay life partner, and plaintiffs Frank and Alfred Morales (the "Moraleses") are Rovira's biological adult children from a prior marriage who lived with Rovira and Forlini for ten of the twelve years the two women lived together.

In 1976, Forlini and Rovira entered into what proved to be a long and committed relationship. The couple formalized their relationship on March 7, 1977, in a ceremony "during which they exchanged rings and vows. Though as a lesbian couple [residing in New York] they were not entitled to marry, Sandra [Rovira] and Marjorie [Forlini] utilized the same symbolic ceremony usually associated with marriage to commit themselves to each other for the rest of their lives." Lee Bantle Letter to AT & T Employees' Benefit Committee 1 (April 26,

1989), Rizzi Aff., Exh. 7. On March 7, 1987, Rovira and Forlini signed an unofficial certificate attesting to their commitment and relationship. *Id.*

In 1978, the Moraleses, then aged 11 and 8, came to live with Rovira and Forlini. Although Rovira was the biological mother of the Moraleses, their tuition, medical bills, food, clothing, housing, entertainment and other expenses were paid from the joint financial resources of Forlini and Rovira. Pl.'s 3(g) Statement ¶ 29. From 1979 to 1984, Forlini claimed one or both of the Moraleses as "dependents" on her tax returns and described them therein as her "godchild[ren]." Rovira Aff., Exh. C. Indeed, throughout their relationship, Rovira and Forlini "pooled their [financial] resources, shared responsibility for making the important decisions affecting their lives, jointly owned their home, ... [and] took vacations together." Bantle Letter, *supra,* at 2, Rizzi Aff., Exh. 7.

In 1988, Rovira was named the beneficiary of Forlini's life insurance policy, which was provided to Forlini as a benefit of her employment with AT & T. Pl.'s 3(g) Statement ¶ 25; Rizzi Aff., Exh. 11, at 37. Forlini listed Rovira as her "friend" under the relationship column of the life insurance designation form. Rizzi Aff., Exh. 11. In Forlini's Last Will and Testament, Rovira was named the residuary legatee and executor of Forlini's estate. As the residuary legatee of Forlini's estate, Rovira received between $20,000 and $30,000 in cash and Forlini's car. Rovira Dep. at 245–48, Rizzi Reply Aff., Exh. K. Forlini's will did not, however, refer to Rovira as her spouse, and did not mention the Moraleses. Rizzi Aff., Exh. 8. Pursuant to a right of survivorship, Rovira also received Forlini's share of the house they co-owned and which was worth $300,000. Rovira Dep. at 245–48, Rizzi Reply Aff., Exh. K.[1]

### II. The Employee Benefits Plan

As an AT & T sales manager, Forlini was covered under the Plan, an employee benefit plan governed by ERISA that provides for payment of a Sickness Death Benefit to the eligible beneficiaries of deceased employees

---

1. Forlini left certain artifacts and her securities    to members of her family.

who participated in the Plan. The Plan limits eligible beneficiaries for Sickness Death Benefits to three categories of persons: "the spouse and the dependent children and other dependent relatives of the deceased." Management Pension Plan at 99 (§ 4), Rizzi Aff., Exh. 3.

The Plan further creates two categories of beneficiaries: mandatory and discretionary. With respect to the mandatory beneficiary category, the Plan states that "the maximum benefit shall be paid to" the spouse, dependent children, or a dependent parent living with or in a household in the vicinity that is provided by the employee. *Id.* at 100 (§ 5(4)(a)). With regard to the discretionary beneficiary category, the Plan states that "a Sickness Death Benefit … may be paid to" other dependent relatives, and it grants AT & T's Employees' Benefit Committee, the "final review committee" on all decisions involving benefit claims, "full authority to determine to whom payments shall be paid and the amount of the payments, taking into consideration the degree of dependency and such other facts as it may deem pertinent." *Id.* at 101 (§ 5(4)(b)).

Under section 3(2)(e)(i) of the Plan, the Employees' Benefit Committee "shall grant or deny claims for benefits under the Plan with respect to employees of each Participating Company, respectively, and authorize disbursements according to this Plan." *Id.* at 21. The Employees' Benefit Committee are trustees of the Plan pursuant to the provisions of ERISA. 29 U.S.C. § 1103(a).

The relevant provisions of the Plan are as follows: Section 5(4), entitled "Eligible Beneficiaries," provides:

The persons who may be beneficiaries of the … Sickness Death Benefit … are limited to the spouse and the dependent children and other dependent relatives of the deceased.

Section 5(4)(a), entitled "Mandatory Beneficiaries," provides:

[I]n the event of death by sickness, the maximum Sickness Death Benefit … shall be paid … [1] to the spouse of the deceased employee if living with him at the time of his death, or [2] the unmarried child or children of the deceased employee under the age of 23 years … who were actually supported in whole or in part by the deceased employee at the time of death, or [3] a dependent parent who lives in the same household with the employee or who lives in a separate household in the vicinity which is provided for the parent by the employee.

Section 5(4)(b), entitled "Discretionary Beneficiaries," provides:

If there be no beneficiary of the deceased employee as described in Subparagraph [ (4) ](a) …, a Sickness Death Benefit … may be paid to … any other person or persons who may be beneficiaries, as defined in the first sentence of this Paragraph ·4 [i.e., spouse, dependent children and other dependent relatives of the deceased employee], and be receiving or entitled to receive support from the deceased employee at the time of his death.

Section 5(4)(b) also provides that "the [Employees' Benefit] Committee … shall have full authority to determine to whom payments shall be made and the amount of the payments, taking into consideration the degree of dependency and such other facts as it may deem pertinent." *Id.* at 99–101.

Pursuant to its legal obligations under ERISA, *see* 29 U.S.C. §§ 1021, 1022 & 1024, AT & T created and gave its salaried employees, including Forlini, a Summary Plan Description ("SPD") that summarizes the provisions of the Plan. The eligible beneficiary categories listed in the SPD mirror the beneficiary categories contained in the Plan:

*Mandatory beneficiaries* are your:

—legal spouse, if living with you at the time of your death

—unmarried dependent children up to age 23 (age 23 or over if disabled and incapable of self-support)

—dependent parent living with you or in a separate household that you provide in the vicinity of your home.

If you are survived by more than one mandatory beneficiary, the Participating Company Benefit Committee, in its discretion, will determine whether to pay the full benefit to one beneficiary or to divide it

equally, or in some other proportion, among any of them. If you do not have a mandatory beneficiary, death benefits may be payable to a discretionary beneficiary. *Discretionary beneficiaries* are your other relatives who are dependent on you for financial support prior to your death and who demonstrate a financial need after your death. The Participating Company Benefit Committee will determine whether to pay a death benefit to a discretionary beneficiary, and if so, how much. The Committee's decision will be based on financial need.

SPD at 19, Rizzi Aff., Exh. 5.

AT & T also promulgated Death Benefit Guidelines, which set forth definitions and interpretations of the terms found in the sickness death benefit provisions of the Plan. Under the Death Benefit Guidelines, a "spouse," as that term is used in the mandatory beneficiary category, "must be legally married to the employee at the time of death." Death Benefit Guidelines at 002131, Rizzi Aff., Exh. 6. The Death Benefit Guidelines add that "[t]he State in which the employee primarily resides would set the criteria for a valid marriage. If the State recognizes the union, the Plan will also." *Id.* An "[u]nmarried child under the age of 23" is defined as "a child of the employee who on the day of the death of the employee was not yet 23 years of age, was recognized by the employee as his child, and was never married." *Id.* The definition of the term "relative" under the discretionary beneficiary category,

> would include any blood relation—a child, parent, brother, sister, grandparent, uncle, aunt, cousin or wife. This designation would also include stepchildren who were not legally adopted. In-laws are not usually considered relatives for plan purposes. However, extenuating circumstances might warrant their being considered; e.g., the employee and spouse have the spouse's parent living with them and the employee supports the parent. If both employee

and spouse die in a common disaster, the in-law *could* be considered a discretionary beneficiary.

*Id.* at 002133–34. Finally, the Death Benefit Guidelines define the term "dependent" to mean:

> "that the potential beneficiary must demonstrate *need* and *dependency.* For example, an aged invalid sister lives with our employee. The employee prepares the sister's meals, feeds her, transports her to the doctor for periodic check ups. The sister has demonstrated dependence. But if she has $20,000 in a savings account and a large portfolio of stocks and bonds, there would be some question of demonstrated need."

*Id.* at 002134.

Pursuant to ERISA, AT & T distributed copies of the SPD and the interpretive Death Benefit Guidelines, but not the Plan, to its employees.[2]

## III. The Equal Opportunity Policy

AT & T also published an AT & T Personnel Guide and the AT & T Equal Employment Opportunity/Affirmative Action Employee Reference Guide (the "E.O. Reference Guide"). Both Guides contain guidelines opposing discrimination against employees. Neither the Plan, the SPD, nor the interpretive Death Benefit Guidelines are referred to in the Personnel Guide or the E.O. Reference Guide.

In the Personnel Guide, AT & T defines equal opportunity in general to mean "that all employment decisions are made and personnel policies are administered without discrimination on the basis of . . . sexual preference or orientation [or] marital status. . . ." Personnel Guide at 3, Bantle Aff., Exh. C. The Personnel Guide then explains that it is AT & T's particular policy to "[p]rohibit unlawful discrimination . . . because of race, color, religion, national origin, sex, age . . . in any employment decision or in the administration of any personnel policy." *Id.* at 4.

---

**2.** ERISA requires that the administrator furnish to each participant and each beneficiary a copy of the summary plan description and a copy of the annual report within a prescribed time period. 29 U.S.C. §§ 1021(a)(1), 1022(a)(1), 1024(b)(1); *see Finz v. Schlesinger,* 957 F.2d 78, 82 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992).

"The use of a person's sexual preference or orientation, or marital status," on the other hand, is prohibited "as a criterion in personnel decisions." *Id.* While the Personnel Guide does not elaborate on the distinctions between "employment decisions," "administration of any personnel policy" and "personnel decisions," it states that the equal opportunity policy "applies to all aspects of employment at AT & T, specifically *including* ... benefits...." *Id.* at 5; Pl.'s 3(g) Statement, ¶ 14.

The E.O. Reference Guide contains similar guidelines for non-discrimination toward AT & T's employees, although its legal effect is limited by a "Notice" on the first page of the Reference Guide stating:

> This guide is not a contract of employment but a set of guidelines for the implementation of personnel policies. It should not be interpreted to create any expressed [sic] or implied contractual rights between AT & T and any employee. AT & T explicitly reserves the right to modify or rescind the provisions in this guide at any time and without notice within the limits permitted by law.

E.O. Reference Guide at 1, Bantle Aff., Exh. F. Like the Personnel Guide, the E.O. Reference Guide states that it is AT & T's policy to "prohibit the use of a person's sexual orientation or marital status as a criterion in personnel decisions," and to "prohibit unlawful discrimination or harassment because of race, color, religion, national origin ... in any employment decision or in the administration of any personnel policy." *Id.* at 3. The E.O. Reference Guide also promises that AT & T will administer "benefits [and] compensation ... for all employees and applicants without unlawful discrimination on the grounds of: ... marital status [or] sexual orientation...." *Id.* at 4. AT & T has a "Sexual Orientation Policy" which promises that "an individual's sexual orientation is not a criterion either for becoming an employee or remaining an employee of AT & T.... An individual's sexual orientation is strictly personal and information about this matter should not be sought by company personnel." *Id.* at 5. The E.O. Reference Guide also specifically states that AT & T administers

"benefits" and "compensation" "for all employees ... without unlawful discrimination on the grounds of ... marital status" or "sexual orientation." *Id.* at 4.

Neither the Plan, the SPD, nor the interpretive Death Benefit Guidelines mention the AT & T equal opportunity policy.

## IV. The Denial of Benefits

In October 1988, Rovira submitted a claim to AT & T as a mandatory beneficiary for the Sickness Death Benefits provided as part of Forlini's AT & T employment benefits plan, alleging that she stood in the position of spouse of Forlini. AT & T's Employee Benefits Department denied the claim orally. On January 9, 1989, the Moraleses also claimed a benefit as mandatory beneficiaries and as discretionary beneficiaries under the Plan, alleging that they stood in the position of dependent children or dependent relatives of Forlini. That claim too was denied orally by the Employee Benefits Department.

On April 26, 1989, Plaintiffs appealed both denials of Sickness Death Benefits to the AT & T Benefit Committee, which, as the intermediate review committee below the Employees' Benefit Committee, makes initial reviews of denials of benefits by the Employee Benefits Department. The Plaintiffs' appeal to the Benefit Committee relied in part upon AT & T's equal opportunity policy contained in the AT & T Personnel Guide. On June 19, 1989, the AT & T Benefit Committee considered the Plaintiffs' claims for Sickness Death Benefits totalling $53,000. "Two members voted in favor of paying the benefit.... Two members voted against paying any benefit to the plaintiffs." Pl.'s 3(g) Statement, ¶ 17. David Shaver, one of the Committee members who voted in favor of paying the benefit, admitted at deposition that he "had a clear understanding that Ms. Rovira here did not meet the criteria for a beneficiary under" the AT & T Plan as then drafted, but felt that the Plan and benefit policies should be reviewed and updated to allow persons like Rovira successfully to claim benefits. Shaver Dep. at 15–16, Bantle Aff., Exh. K.

The AT & T benefit committee's decision was appealed to the Employees' Benefit Committee, the final review committee,

which reviewed Plaintiffs' applications at its meeting on November 14, 1989. In voting to deny Plaintiffs' benefits claims pursuant to the Plan, the Committee stated:

> The Committee determined that because Ms. Forlini and Ms. Rovira's relationship is not recognized as a valid marriage in the state in which they resided, Ms. Rovira does not meet the eligibility criteria to qualify as a beneficiary under the provisions of the [Plan]. Dependent children must be either the natural or adopted children of the employee, or the natural or adopted children of the employee's legal spouse. The Committee determined that because Frank and Alfred Morales are not the natural or adopted children of Ms. Forlini or of her legal spouse, they also do not qualify as beneficiaries under the provisions of the [Plan]. The Committee also noted that the provisions of the [Plan] are administered uniformly to all employees without discrimination on the basis of race, color, religion, national origin, sex, sexual preference or orientation.

AT & T Employees' Benefit Committee Minutes Of Meeting Held November 14, 1989, at 000276, Bantle Aff., Exh. G. ·

On August 20, 1990, Plaintiffs filed the present Complaint, in which they allege that the Employees' Benefit Committee's denial of their claims for death benefits was arbitrary and capricious. By Opinion and Order dated March 29, 1991, this Court dismissed the state and local law discrimination and common-law breach of contract claims set forth in Counts IV, V, and VI of the Complaint, without prejudice to their being brought in state court. *Rovira v. AT & T,* 760 F.Supp. 376 (S.D.N.Y.1991).

The counts remaining in the Complaint allege that each of the Plaintiffs was "one of Forlini's beneficiaries under [the Plan]" and seeks Sickness Death Benefits on that basis pursuant to ERISA. Compl. ¶¶ 4–6. In Count I of the Complaint, Rovira seeks to recover the Sickness Death Benefits as a mandatory beneficiary; in Count II, Frank and Alfred Morales seek to recover the same benefit as mandatory beneficiaries; and in Count III, the Moraleses seek to recover the benefit as discretionary beneficiaries.

## DISCUSSION

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the non-moving party, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

■ The AT & T Employees' Benefit Committee's denial of Plaintiffs' Sickness Death Benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

■ In determining the standard of review, "any ambiguities must be construed against the administrator and in favor of the party seeking judicial review, particularly in a situation ... where the plan administrator is also the party responsible for paying the benefits at issue." *Arthurs v. Metropolitan Life Ins. Co.,* 760 F.Supp. 1095, 1098 (S.D.N.Y.1991) (citing *Guisti v. General Electric Co.,* 733 F.Supp. 141, 141 (N.D.N.Y. 1990)).

■ Certain provisions of the Plan appear to give the Employees' Benefit Committee discretionary authority to determine eligibility for benefits. Thus, section 3(2)(e)(i) provides that the Employees' Benefit Committee "shall grant or deny claims for benefits under the Plan ... and authorize disbursements according to this Plan." Section 3(3)(a) provides that "the [Employees' Benefit] Committee shall serve as the final review committee, under the Plan and [ERISA], for the review of all appeal claims...." Section

3(4) provides that "the [Employees' Benefit] Committee shall determine conclusively for all parties all questions arising in the administration of the Plan and any decision of such committee shall not be subject to further review." Similarly, section 4, entitled "Eligible Beneficiaries," states that the "amount to be paid in each case and the beneficiary or beneficiaries who shall receive the same ... shall be determined by the Committee." And section 5(4)(B) provides that the Committee "shall have full authority to determine to whom payments shall be made and the amount of payments." The Plan does not, however, expressly confer upon the Committee the power to interpret or construe the terms or provisions of the Plan, nor does it state that the Committee's eligibility determinations are to be given deference. *See Masella v. Blue Cross & Blue Shield, Inc.,* 936 F.2d 98 (2d Cir.1991); *Guisti v. General Electric Co.,* 733 F.Supp. 141, 147 (N.D.N.Y. 1990). *See also Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480 (9th Cir. 1990) (applying arbitrary and capricious standard only when the plan expressly gives plan administrator power to construe the provisions of the Plan or to "interpret the Plan"); *Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension & Retirement Fund,* 877 F.2d 441 (5th Cir.1989); *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37 (11th Cir.1989). Furthermore, some Plan provisions regarding Sickness Death Benefits contain categorical language that evidence no grant of discretion to the Committee under the present circumstances with regard to mandatory death beneficiaries. *See, e.g.,* AT & T Management Pension Plan at 96, 97, 100, Rizzi Aff., Exh. 3 (in circumstances involving mandatory death beneficiaries "there *shall* be paid ... a Sickness Death Benefit"). *See also Heidgerd v. Olin Corp.,* 906 F.2d 903, 908 (2d Cir.1990) (existence of categorical language in employee benefits plan indicates no grant of discretion under circumstances of case).

Accordingly, since the Plan does not indicate unambiguously that the Plan administrator, AT & T, shall wield discretionary authority over benefits decisions, the Court will subject the AT & T Employees' Benefits Committee's denial of the claimed benefits to a *de novo* standard of review.

■ The Plan is a contract between private parties—AT & T and its employees. *See Allen v. Western Conference of Teamsters Pension Trust Fund,* 788 F.2d 648, 650 (9th Cir.1986). Defining a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder," 29 U.S.C. § 1002(8), ERISA "provides for enforcement of the terms of a plan agreement and gives a participant or beneficiary the right to bring a civil action," *Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1418 (2d Cir.1985), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986).

■ To establish that they have standing to bring this case under ERISA, Plaintiffs must make out a "colorable" claim that they are beneficiaries under the Plan because they are or will become eligible for Sickness Death Benefits under the terms of the Plan. *See Firestone Tire,* 489 U.S. at 118, 109 S.Ct. at 958 (standing test with regard to benefit plan participants). This Plaintiffs have not done.

■ First, there is no showing on the record that Forlini, as an AT & T Plan participant, designated Rovira as a Sickness Death Benefit beneficiary or a beneficiary of any sort under the Plan or referred to Rovira as her spouse or life partner in any employment or benefit-related document. There is also no showing on the record that Forlini specifically designated or intended the Moraleses to receive Sickness Death Benefits, or that she referred to either of the Moraleses in any employment or benefit-related documents as her adopted children, step-children or relatives. *See* AT & T Management Pension Plan at 101 (§ 5(4)(c)), Rizzi Aff., Exh. 3 (providing for beneficiary designation under discretionary beneficiary category).

Second, the terms of the Plan documents, especially the interpretive Death Benefit Guidelines, plainly limit eligible beneficiaries to legal spouses, and persons who are either the dependent adopted children, step-children, or dependent relatives of the partici-

pant.[3] Both the SPD and the Death Benefit Guidelines require that a claimant seeking benefits as a spouse under the mandatory beneficiary category be legally married to the participant-employee at the time of the employee's death, and the Death Benefit Guidelines provide that the State in which the employee primarily resides sets the criteria for a valid marriage. Death Benefit Guidelines at 002131, Rizzi Aff., Exh. 6. Under the terms of the Plan documents, therefore, Rovira is not a designated mandatory beneficiary because she is not Forlini's legal spouse.

■ Plaintiffs argue, relying on New York law, that Rovira is the functional equivalent of a spouse and therefore should be eligible as a mandatory beneficiary under the Plan, that the Moraleses are the functional equivalent of Forlini's children and therefore should qualify as mandatory beneficiaries, and that for all functional purposes they are Forlini's "relatives" who qualify as discretionary beneficiaries.

With regard to Rovira's claim for benefits as a mandatory beneficiary, the plain words of the SPD and the Plan, which bind the Employees' Benefits Committee in its interpretations of the Plan and determinations thereunder, *Dellacava v. Painters Pension Fund*, 851 F.2d 22, 25 (2d Cir.1988) (trustees of ERISA plan are prohibited from imposing standard that is not required by plan, and are also prohibited from interpreting plan "in a manner" that is "inconsistent with ... plain words" of plan); require a legal marriage rather than a putative or functional one. SPD at 19, Rizzi Aff., Exh. 5. In this case, the Committee members who voted to deny Rovira's claim for benefits construed "spouse" as stated under the Plan and "legal spouse" in the SPD by its plain meaning to require a marriage valid under state law. There is no evidence that as trustees under the Plan they had ever interpreted the term in any other way.

■ As for the Moraleses' claim for benefits as mandatory beneficiaries on the ground that they are Forlini's dependent children, the plain meaning of the term "children" requires that the beneficiary be the natural, adopted or step-child of Forlini, the Plan participant. The Moraleses fall into none of these categories: The record indicates that Forlini did not adopt them, nor are they the children of Forlini's spouse by a previous marriage. *See* Black's Law Dictionary 1267 (5th Ed.1979) (defining "stepchild"); Webster's II Dictionary 1137 (1984) (same). Therefore, the Moraleses are not mandatory beneficiaries, nor, under the plain meaning of the term, are they "relatives" of Forlini either by birth or by marriage who may qualify as discretionary beneficiaries. *See Dellacava*, 851 F.2d at 25.[4] *See also* 29 U.S.C. § 1002(15) (defining term "relative" to mean "a spouse, ancestor, lineal descendant, or spouse of a lineal descendant").

■ Plaintiffs contend, however, that by limiting the class of eligible beneficiaries to legal spouses and dependent children and relatives, AT & T breached its promises, contained in its equal opportunity policy, not to discriminate on the basis of marital status or sexual orientation in the administration of benefits. They argue that where an employer adopts a non-discrimination policy which it states is applicable to the administration of employees' benefits, that policy must be followed with regard to the administration of plan benefits, and that, without such application, the policy has no meaning and in failing to fulfill its promises to its employees the employer violates ERISA.

The SPD and the interpretive Death Benefit Guidelines, copies of which AT & T furnished to Forlini, as well as the Plan itself,

---

**3.** Under extenuating circumstances, a participant's in-laws (that is, the spouse's dependent relatives), who are "not usually considered relatives for plan purposes," could qualify for discretionary benefits. Death Benefit Guidelines at 002133, Rizzi Aff., Exh. 6. Even this eligibility determination, however, involves a relationship predicated on the existence of a legal marriage.

**4.** Of course, with regard to the Moraleses' claim to being discretionary beneficiaries, the Court's review would have to be based on an arbitrary and capricious standard. The Court determines that in view of its fiduciary obligation to abide by the Plan documents, the Employees' Benefits Committee did not act in an arbitrary and capricious manner in denying the Moraleses benefits under the discretionary beneficiary category.

are the only controlling documents that form part of the terms of the Plan agreement, and that apply to the administration of the Plan. They are the only documents upon which the Employees' Benefits Committee, trustees of the Plan, as fiduciaries, can rely in making eligibility determinations and discharging their duties under the Plan. 29 U.S.C. § 1104(a)(1)(D).[5]

AT & T's equal opportunity policy not to discriminate on the basis of marital status or sexual orientation is addressed to personnel, *i.e.*, employees, and there is no showing that it was "intended to apply to any person other than the employee herself." *Rovira v. AT & T,* 760 F.Supp. 376, 379 (S.D.N.Y.1991). In fact, the E.O. Reference Guide contains a notice that it does not confer any contractual rights at all. In short, the policy contained in the E.O. Reference Guide, and presumably the Personnel Guide, is disaffirmed as conferring contractual rights on AT & T's employees. Thus, AT & T's equal opportunity policy does not create third party beneficiary rights on Plaintiffs allowing them to recover Plan benefits pursuant to ERISA. *See Wilmer v. Tennessee Eastman Co.,* 919 F.2d 1160 (6th Cir.1990); *Lofton v. Wyeth Laboratories, Inc.,* 643 F.Supp. 170 (E.D.Pa.1986).

Under ERISA, the fiduciary of a benefit plan shall "discharge his duties with respect to a plan and administer the plan solely ... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent" with other specified ERISA provisions. 29 U.S.C. § 1104(1)(D).[6]

Thus, AT & T's E.O. Reference and Personnel Guides containing AT & T's non-discrimination policies do not control the eligibility determinations for Sickness Death Benefits under the Plan, which is governed by ERISA, because they are not "governing plan documents." As the Second Circuit stated in *Moore v. Metropolitan Life Ins. Co.:*

> Congress intended that plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans. This intention was based on a sound rationale. Were all communications between an employer and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan, the plan documents and the SPDs would establish merely a floor for an employer's future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created.

856 F.2d 488, 492 (2d Cir.1988).[7]

In addition, Plaintiffs have not pointed to any evidence on the record that Forlini relied to her detriment on the representations contained in the equal opportunity policy, or that the equal opportunity policy's general non-discrimination provisions misled Forlini about her Sickness Death Benefits or defeated her reasonable expectations concerning the administration of the Sickness Death Benefits. *See Schwartz v. Newsweek, Inc.,* 827 F.2d 879, 882 (2d Cir.1987); *Amato,* 773 F.2d at 1409.

---

**5.** Since the SPD, rather than the Plan itself, was actually distributed to AT & T employees as a description of the Plan, it would control in the event of conflicts with the Plan or other Plan documents. *See Heidgerd, supra,* 906 F.2d at 907–08; *Arthurs, supra,* 760 F.Supp. at 1099 n. 2. If the Personnel Guide or the E.O. Reference Guide were to be considered Plan documents, then presumably, since they were not distributed as Plan documents to AT & T's employees, they too would be governed by the SPD.

**6.** If this were a state law breach of contract claim for employee termination and the Guides contained no disclaimers, the result might differ. *See, e.g., Mycak v. Honeywell, Inc.,* 953 F.2d 798 (2d Cir.1992) (state law breach of contract claim in diversity action concerning manual specifying procedure for employee termination); *Gorrill v.*

*Icelandair/Flugleidir,* 761 F.2d 847 (2d Cir.1985) (New York state contract claim arising out of representations made in personnel handbook regarding employee termination). *But see Wilmer v. Tennessee Eastman Co.,* 919 F.2d 1160 (6th Cir.1990) (no breach of contract claim where employee manual includes disclaimers and fails to manifest any contractual intent).

**7.** Were the Plaintiffs' arguments to prevail, significant other "spouses" and children of significant others, as well as gay and lesbian "spouses," would be entitled to apply for benefits, and defining the contours of the "spousal" relationship would become a complex problem of administration. Such matters are better addressed through legislative means or union-management negotiations rather than on an ad hoc basis.

■ Plaintiffs also fail to make out a "colorable" claim for discrimination cognizable under ERISA. Plaintiffs point to several New York state law cases [8] to argue that AT & T's denial of benefits to them is based on discrimination against unmarried couples and gays and lesbians. Where ERISA is involved, however, these state cases cannot provide guidance as to the outcome. "ERISA's preemption provision is very broad: ERISA 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title.' 29 U.S.C. § 1144(a) (1988). Under this provision, pension plan regulation is made an exclusively federal concern." *Hurwitz v. Sher,* 982 F.2d 778, 780 (2d Cir.1992) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44–46, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987); 29 U.S.C. § 1144(a) (1988)).

Of course, discrimination "constitutes a fiduciary breach for purposes of ERISA." *Pallas v. Pacific Bell,* 940 F.2d 1324, 1327 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 916, 116 L.Ed.2d 815 (1992). But provisions within governing documents of ERISA-covered pension plans limiting the class of eligible beneficiaries to actual spouses and defining the term "spouse" to require a marriage valid under state law, as is the case here, are not *per se* unreasonable or discriminatory under ERISA. *See Allen v. Western Conference of Teamsters Pension Trust Fund,* 788 F.2d 648 (9th Cir.1986); *Malhiot v. Southern California Retail Clerks Union,* 735 F.2d 1133 (9th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985); *Rehmar v. Smith,* 555 F.2d 1362 (9th Cir.1977). *See also* 29 U.S.C.

§ 1055(f) (employee benefits plan may provide for marriage requirements as prerequisite to eligibility for qualified joint and survivor annuity).

## CONCLUSION

In sum, based on a *de novo* review, the decision of AT & T's Employees' Benefits Committee to deny Rovira and the Moraleses Sickness Death Benefits under AT & T's Management Pension Plan was not incorrect, and Plaintiffs are not entitled to damages. Accordingly, AT & T's motion for summary judgment is granted, and Plaintiffs' motion for partial summary judgment is denied.

IT IS SO ORDERED.

---

8. Under New York law, there is some indication that with respect to housing, rent control and eviction issues, Rovira and Forlini and the Moraleses comprise a family unit. *See Braschi v. Stahl Assocs. Co.,* 74 N.Y.2d 201, 544 N.Y.S.2d 784, 789, 543 N.E.2d 49, 54 (1989) ("In the context of eviction, a more realistic and certainly equally valid view of a family includes two adult lifetime partners whose relationship is long term and characterized by an emotional and financial interdependence"); *Gay Teachers Ass'n v. Bd. of Educ. of City of New York,* No. 43069/88, slip op. (Sup.Ct. Aug. 16, 1991), *aff'd,* 183 A.D.2d 478, 585 N.Y.S.2d 1016 (1st Dep't 1992) (plaintiffs state a claim of sexual orientation and marital status discrimination against an employer that

provided health insurance benefits to spouses but not to domestic partners). Despite several obstacles, there have been other encouraging legal developments in New York City regarding the rights of domestic partners. For example, pursuant to mayoral executive orders, New York City now permits domestic partners in New York City who register as such to obtain certain noneconomic benefits on a par with legally married couples. One can only guess as to the amount of time that will pass before executive and legislative actions grant similar rights in the areas of health, retirement and death benefits. *See* Note, *Domestic Partnership,* 92 Colum.L.Rev. 1164 (1992) (outlining development of domestic relations law regarding domestic partnerships).