Steve SHARP and Betty
Sharp, Plaintiffs,

v.

**NATIONAL RURAL ELECTRIC COOP-ERATIVE ASSOCIATION and Prudential Life Insurance Co., Defendants.**

No. LR–C–93–460.

United States District Court,
E.D. Arkansas,
Western Division.

Sept. 28, 1994.

---

**1218**

Thomas M. Bramhall, Little Rock, AR, for plaintiffs.

Sherry P. Bartley and Marcella J. Taylor, Mitchell, Williams, Selig, Gates & Woodyard, Little Rock, AR, and John Jay Range and Kimberly A. Newman, Hunton & Williams, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

This case involves a dispute over the payment of health care benefits under an employee benefit plan. Plaintiffs filed a breach of contract claim against the defendants in state court on June 1, 1993, for failure to pay approximately $60,000.00 in mental health benefits. Defendants removed the case to federal court on July 1, 1993, as a claim preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Now before the Court are plaintiffs' motion for partial summary judgment and defendants' motion for summary judgment. Upon review of the motions, briefs, statement of facts, responses, and reply, the Court finds, for the reasons that follow, defendants' motion for summary judgment should be granted.

### I.

Separate defendant National Rural Electric Cooperative Association ("NRECA") is the national trade association for the more than 1,000 rural electric cooperatives throughout the United States. The NRECA created a welfare benefit plan, including a medical plan. The NRECA medical plan provides medical benefits through a trust fund called the NRECA Group Benefits Trust ("Trust"). Cooperative Benefits Administrators, Inc. ("CBA"), a wholly owned subsidiary of NRECA, has been the claims administrator of the plan. Prior to July 1, 1989, the plan was partially insured through a policy issued by separate defendant Prudential Life Insurance Company ("Prudential"). The Trust was the policyholder of and paid the premium due on the Prudential policy.

While the Prudential policy was in effect, the Trust collected contributions from its member systems, and in some instances, from their employees to pay for benefits due under the terms of the plan. If claims to the Trust in any given year exceeded a negotiated, preset dollar amount (the "attachment point"), the Prudential policy would reimburse the Trust for amounts paid in excess of the attachment point. Because claims never exceeded the attachment point, the Trust never received any backup funding from the Prudential plan.

On July 1, 1989, the Prudential insurance policy was terminated and the plan became fully self-insured. No modifications were made to the plan's provisions regarding mental health benefits.[1] The CBA's policy and procedure was to count all payments made prior to the time the plan became self-insured in administering the plan after it became self-insured. Participants received credit for deductibles and co-payments, and the Trust received credit for benefit payments made to participants prior to July 1, 1989, when the plan was partially insured by Prudential. As a result, payments made for mental, psychoneurotic and personality disorders prior to July 1, 1989 were counted in determining whether a $50,000 lifetime cap on mental health benefits had been reached.

Plaintiff Steve Sharp began his employment as a principal engineer with the Arkansas Electric Cooperative Corporation ("AECC") in 1986. His wife, Jan Sharp, has been a beneficiary of the plan since his employment. Mrs. Sharp suffers from anorexia nervosa, which sometimes requires psychiatric care and also results occasionally in physical problems which require medical treatment and sometimes hospitalization. She has received treatment for her personality

---

1. The plan contains two kinds of limitations on mental benefits. The first is a $50,000 lifetime maximum on mental health benefits. The second is a limitation on the number of visits and the amount that can be claimed for visits to a physician for mental treatment.

disorders at various times for the past ten to twelve years. Between 1986 and 1989, Mrs. Sharp submitted claims of more than $50,000 for treatment of her personality disorders. On December 15, 1988, CBA informed Mrs. Sharp that she had exceeded the $50,000 lifetime cap on benefits provided by the plan. Approximately two years later, the Sharps appealed that determination through the administrative appeals procedure provided by the plan. They argued that the limitations on mental health benefits violated Ark.Code Ann. § 23–86–113 and, alternatively, that they were entitled to a new $50,000 limitation once the plan became self-insured in July 1989. They also claimed that some of the claims submitted after July 1989 were improperly characterized as mental rather than medical expenses. The plan's Appeals Committee awarded additional payment on some of Mrs. Sharp's claims but denied the remainder of her claims.

## II.

In their motion for partial summary judgment, plaintiffs contend the limitations on mental health benefits in the plan while funded by Prudential ("the Prudential plan") violate Ark.Code Ann. § 23–86–113 (Michie Repl.1992), and, therefore, they are entitled to benefit payments for the sums defendants refused to pay based upon those limitations. In addition, plaintiffs urge that payments made under the Prudential plan should not be credited to the NRECA to satisfy the $50,000.00 maximum lifetime mental health benefit limitation contained in the self-insured plan which became effective July 1, 1989.

In response, defendants filed their own motion for summary judgment. Defendants contend summary judgment is appropriate because the administrative record does not indicate the CBA was arbitrary or capricious or abused its discretion, and because ERISA preempted state law after the NRECA medical plan became self-insured on July 1, 1989.

They further argue the Sharps cannot assert a violation of state law for claims arising before July 1, 1989, because (1) plaintiffs failed to exhaust administrative remedies as required by the plan; (2) there is no private right of action under § 23–86–113; (3) plaintiffs were not the policyholders of the insurance policy issued by Prudential; and (4) there was no violation of § 23–86–113 because the Prudential plan provided more liberal benefits than required by the statute.

## III.

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Evans v. Pugh*, 902 F.2d 689, 691 (8th Cir.1990). The burden on the moving party is only to demonstrate that the record does not disclose a genuine issue as to any material fact. The party opposing the motion must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Id.* (citations omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

## IV.

A. The Court begins by addressing plaintiffs' arguments involving claims for benefits submitted prior to July 1989.

Plaintiffs first contend that, during the time the plan was partially funded by the Prudential insurance contract,[2] the plan pro-

---

**2.** In *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) and *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court held that common

law claims relating to an employee benefit plan are preempted by ERISA unless the claims involve a state law regulating insurance. There is no dispute that § 23–86–113 regulates insurance. Additionally, the parties agree that prior to July

visions relating to mental health benefits violated Ark.Code Ann. § 23–86–113, which provides, in pertinent part:

(a) Unless refused in writing, every group disability policy or group contract of hospital and medical service corporations issued or renewed after July 1, 1983, providing hospitalization or medical benefits to Arkansas residents for conditions arising from mental illness shall, on and after July 1, 1983, provide the following minimum benefits:

.    .    .    .    .

(c) The insurer or hospital and medical service corporation shall not impose limits on benefits under subsection (a) of this section with regard to deductible amounts, lifetime maximum payments, payments per outpatient visit, or payments per day of partial hospitalization which differ from benefits for any other condition or illness, provided such insurer or hospital and medical service corporation may impose an annual maximum benefit payable, which shall not be less than seven thousand five hundred dollars ($7,500) per calendar year.

Under the plan, the benefits for regular medical treatment are unlimited but for mental treatment there is a lifetime limit of $50,-000.00. The plan also covers 80% of all medical expenses up to $2,500.00 and 100% for all expenses thereafter, whether for office visits or hospitalization. The plan, however, limits the number of office visits that it will pay for mental benefits and contains a maximum charge for mental benefits per visit.[3]

Plaintiffs contend that the limitations on mental benefits contained in the Prudential plan violate the provisions of § 23–86–113. They argue that because neither the NRECA nor the AECC refused in writing the minimum mental benefits coverage set forth in § 23–86–113, the minimum coverage must be provided. Therefore, plaintiffs argue, they are entitled to benefit payments that were denied on the basis of the limitations prior to July 1989.[4]

Plaintiffs further urge that any payments made under the Prudential plan cannot be applied to a maximum lifetime mental health benefit limitation under the self-insured plan.[5]

In response to plaintiffs' argument that there was no refusal in writing of the minimum mental health benefits coverage contained in the statute, defendants submit an affidavit and other exhibits which show that the NRECA, the policyholder, negotiated with Prudential for the lifetime cap on mental health benefits and other restrictions on mental health coverage and refused the coverage available under Arkansas law.

■ Section 23–86–113(f) provides as follows: "The requirements of this section with respect to a group or blanket disability insurance benefit plan, policy, or subscriber contract shall be satisfied if the coverage specified is made available to the master policyholder of the plan, policy, or contract." Plaintiffs argue that the AECC is the policyholder of the Prudential policy. However, the Court finds that the language of the insurance policy and the Arkansas statute

1, 1989, the Plan was partially insured and, therefore, subject to state regulation. *See FMC Corporation v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

3. The pertinent plan provisions are:

"Individual Maximum—unlimited; but not more than $50,000.00 for charges incurred with mental, psychoneurotic or personality disorders."

"Benefit Percentage—80%; provided that it shall be 100% for a person in a benefit year, after it applies to $2,500.00 of eligible charges, in the aggregate, incurred in connection with that person's illnesses and during the continuous period composed of the benefit year and the preceding three months."

"Eligible Charge Limits for mental, psychoneurotic or personality disorders—40 visits to or by physicians in a benefit year, $75.00 per visit."
Plaintiffs' Exhibit A, p. 2.

4. Plaintiffs claim they were denied claims in the sum of $2,128.63 because they were in excess of the $50,000.00 lifetime limit. Plaintiffs' Exhibit C–1. They also claim Prudential denied claims for outpatient visits in the sum of $6,689.84. Plaintiffs' Exhibit C–3.

5. Plaintiffs claim they were denied benefits for expenses incurred after July 1, 1989, in the sum of $24,917.91 on the basis that they had exceeded the $50,000.00 lifetime limitation. Plaintiffs' Exhibit C–4.

make it clear that the Trust is the master policyholder and that the purpose of the legislation is to make mental health coverage available as an option to the policyholder, not to individual Arkansas residents.

The application for the Prudential insurance policy was submitted in the name of the "Trustees of the National Rural Electric Cooperative Association Group Benefits Trust." McKeithan Supp.Dec. ¶ 3, Ex. 1. The cover page and the first page of the Prudential insurance policy specifically state that the "Policyholder" is the "Trustees of the National Rural Electric Cooperative Association Group Benefits Trust." McKeithan Supp. Dec. ¶ 3, Ex. 2; Macdonald Dec., Ex. 1. The AECC is identified not as the policyholder but as the "employer."

Plaintiffs further argue that the Trust cannot be the policyholder because it acts like an insurance company. The Court finds this argument unpersuasive. ERISA provides, in pertinent part:

> Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, [or] insurance contracts ...

29 U.S.C. § 1144(b)(2)(B). Furthermore, the Court finds that there is no genuine issue of material fact that the Trust acted like a policyholder with respect to Prudential. The Trust negotiated the terms of the policy and the amount of the premium, paid the premium to purchase the policy, submitted annual reports to Prudential identifying the amount of claims received, and signed all amendments and riders to the Prudential policy. McKeithan Supp.Dec. ¶ 5. Neither the AECC nor the plaintiffs did any of these things.

■ Defendants contend there is no genuine issue of fact in dispute as to whether Arkansas residents or individual insureds have the right to insist that their medical insurance provide the level of benefits available under the statute. Under § 23–86–113(f) as set out above, only policyholders are given rights under the statute, which is intended to give group policyholders additional bargaining power with insurance companies to insure that they have the option to obtain a policy with a certain level of mental health benefits. The record demonstrates that the Trust has sufficient bargaining power with Prudential to negotiate any amount of mental health benefits it desired. *See* McKeithan and Marinello Dec. These declarations further demonstrate that NRECA considered the issue of lifetime caps on benefits and that it decided to eliminate the cap on medical benefits but leave unchanged the mental health coverage cap. McKeithan Dec. ¶¶ 6–8; Marinello Dec. ¶¶ 4–8.

■ The Court further finds that the Prudential plan provided generally more favorable benefits to the plaintiffs than the Arkansas statute. This is one of the options under § 23–86–113(e). The statute entitles plaintiffs to $7,500 in mental health benefits per year. During the three and one-half year period from April 1986 when Mr. Sharp became eligible for benefits to July 1989, the statutory benefits would have yielded a maximum of $30,000 (four year times $7,500) or $20,000 less benefits than were paid the plaintiffs during the same period by the plan.[6] As such, the Court finds that there was no violation of § 23–86–113.

Defendants argue that plaintiffs never appealed from their administrative remedies for their pre-July 1, 1989 claims. Even though plaintiffs claim they consistently asked for review of those claims because they thought that many medical claims had been characterized as mental, it appears from the record that plaintiffs protested to the AECC not to the CBA, the plan administrator. In addition, even if plaintiffs appealed classification of the pre-July 1989 claims to the CBA, the record shows they abandoned those

---

6. The Court is not persuaded by plaintiffs' argument that the statute entitled them to $7,500.00 per year for life and, therefore, the plan's $50,-000 lifetime limit cap is not "generally more favorable to the insured" than the Arkansas statute. Plaintiffs would not have been entitled to $7,500 per year for life because the Arkansas statute was preempted by ERISA after the plan became self-insured in July 1989.

claims in 1991. On February 8, 1991, Mr. Sharp wrote a letter to Ms. Julia Woods at the AECC stating:

> I do wish to appeal the denial of claims dated from July 1, 1989 to date which have been classified as psychiatric care but did not involve any psychiatric care.
>
> I have asked several doctors and medical institutions to assist me in this appeal process by providing documentation or explanation of services rendered as well as their opinion as to the correct classification of these charges.

Based on its review of documents obtained from Mrs. Sharp's health care providers and hospitals, the CBA determined on May 15, 1991, that Mrs. Sharp's hospitalizations were properly characterized as treatment of a mental condition. Mr. Sharp appealed the CBA's decision by letter dated July 12, 1991. CBA affirmed its earlier decision that the lifetime mental health limitation had been reached but partially reversed itself on the characterization of some of Mrs. Sharp's claims while hospitalized at the Baptist Medical Center.

Plaintiffs appealed this determination to the CBA's Appeal Committee on August 19, 1991. Plaintiffs' amended notice of appeal included an assignment of error for the mischaracterization of Mrs. Sharp's claims as treatment for a mental condition but it did not identify which claims they believed were mischaracterized. Likewise, a follow-up letter from Mr. Sharp did not list any claims arising before July 1, 1989. It was not until after the Appeals Committee issued its final decision in December 1991 with respect to classification of the post-July 1, 1989 claims and awarded the Sharps an additional $7,158.62 on claims dating back to September 1989, that plaintiffs' counsel wrote referencing pre–1989 claims. By that time, the time

for appealing the pre–1989 claims had expired.[7]

In their reply to defendants' motion for summary judgment, plaintiffs raise for the first time the argument that they were misinformed about their benefits and thus are not bound by the limitations on mental benefits. Specifically, they say a summary prepared by the AECC did not note the $50,000 lifetime cap on mental health benefits. Defendants submit that the summary was not prepared by them and that approximately ninety days after receiving the AECC summary, plaintiffs received a NRECA summary that accurately described the plan, including the cap on mental benefits. The Court finds that there is no genuine issue of fact in dispute on plaintiffs' argument that they were misinformed.

■ Defendants further argue plaintiffs have no private right of action under § 23–86–113, and even if they do, that action would belong to the Trust, which is the policyholder. The plaintiffs cite no case law recognizing a private cause of action and the Court declines to find that plaintiffs have standing under the statute to sue the defendants for a violation of § 23–86–113.

B. The parties agree that ERISA preempts Ark.Code Ann. § 23–86–113 after the plan became self-insured on July 1, 1989. Plaintiffs make two arguments concerning the self-insured plan. First, they claim they are entitled to a second $50,000 for mental health claims. Second, they assert that the CBA erroneously denied benefits by determining some medical expenses to be mental health benefits.[8]

■ Defendants contend that from the time the plaintiffs became eligible for benefits under the plan in 1986, the NRECA sponsored only one, continuous medical plan. While its funding mechanism has changed

---

7. The Court is not persuaded by plaintiffs' assertion that they thought that they were dealing with the Trust only for the post-July 1, 1989 claims and with Prudential prior to that date. Plaintiffs fail to refute evidence that all their claim forms were sent to CBA and all explanation of benefits statements came from CBA, not Prudential.

8. While plaintiffs state that genuine issues of material fact remain concerning the characterization of some of their claims as mental rather than medical, defendants move for summary judgment on this issue as well, arguing that the administrator's determination that claims are within the scope of the mental health limitation can only be reversed if the administrator acts arbitrarily or capriciously, or abuses its discretion.

over the years, the plan has not, and it is the terms of the plan that determine the rights between the Trust and the plan participants. *See Rovira v. AT & T*, 817 F.Supp. 1062, 1069 (S.D.N.Y.1993) ("The Plan is a contract between private parties—[the employer] and its employees"). A change in the plan's funding mechanism from partially insured to self-insured in no way alters the benefits, or limitations on benefits, specified in the plan documents. The $50,000 lifetime cap and other limitations on mental health benefits in the NRECA plan were not changed at any time from 1986, when the Sharps became eligible, to the present time. As a result, Mrs. Sharp is entitled to only one $50,000 lifetime cap on benefits.

Even if the $50,000 limitation were void under the Arkansas statute prior to July 1989, ERISA permits the NRECA's self-insured plan to count those payments toward the $50,000 maximum. Recent cases hold that a plan can reduce or eliminate benefits altogether without incurring liability to participants once the plan becomes self-insured. *See McGann v. H & H Music Co.*, 946 F.2d 401 (5th Cir.1991), *cert. denied*, 113 S.Ct. 482 (1992) (ERISA not violated when plan became self-insured for the express purpose of reducing its lifetime cap on AIDS-related treatments from $1,000,000 to $5,000); *Owen v. Storehouse, Inc.*, 773 F.Supp. 416 (N.D.Ga. 1991), *aff'd* 984 F.2d 394 (11th Cir.1993) (ERISA does not prohibit a company from modifying, altering, or eliminating previously offered benefits that are neither vested nor accrued).

Finally, plaintiffs claim the defendants abused their discretion by treating the medical claims of the plaintiffs as mental benefits claims inconsistently. They specifically listed hospitalizations at the Baptist Medical Center during late 1989 and 1990.

The parties do not dispute that the plan granted the CBA the discretion to interpret the terms of the benefit plan and determine participants' eligibility for benefits. Thus, in this ERISA case, plaintiffs, in order to defeat defendants' motion for summary judgment, must show facts from the record presented to the plan administrator that the denial of the claims was arbitrary, capricious, or an abuse of discretion. *See Cox v. Mid–America Dairymen, Inc.*, 13 F.3d 272, 274 (8th Cir.1994) (district court must apply a deferential standard of review).

The record reveals that the plaintiffs submitted two letters to the Appeals Committee in support of their contention that the CBA had improperly classified some of Mrs. Sharp's post-July 1989 claims as mental rather than medical. These letters from Dr. Baker and Dr. Goodin [Defs. Exhs. 20 and 21] were considered but rejected. The Court finds that the rule adopted by the Appeals Committee for payment of benefits to persons suffering from nervous disorders is reasonable. As Mr. Macdonald, chairman of CBA's Appeals Committee, explained, as long as a claimant is hospitalized for primarily physical problems, her hospitalization is classified as "medical." Once a claimant is physically able to leave the hospital because her physical condition is stabilized, her treatment is classified as primarily "mental." [Macdonald Dec. ¶¶ 22–26]. The record reflects a thorough review of Mrs. Sharp's treatment and plaintiffs present no evidence that the CBA's methodology for classifying treatment as "mental" versus "medical" was arbitrary, capricious, or inconsistently or unreasonably applied.

## V.

Finding there is no genuine issue of material fact in dispute and that defendants are entitled to judgment as a matter of law, the Court grants defendants' motion for summary judgment. Plaintiffs' motion for partial summary judgment is denied and their claims are dismissed. Judgment will be entered accordingly.