**Erskine YARDE, Plaintiff,**

**v.**

**PAN AMERICAN LIFE INSURANCE COMPANY, Georgetown Industries, Inc. and Georgetown Steel Corporation, Defendants.**

**Civil A. No. 2:92–860–18.**

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 4, 1994.

Charles T. Smith, Georgetown, SC, for plaintiff.

L. Hunter Limbaugh, Florence, SC, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NORTON, District Judge.

### I. BACKGROUND

This action arises out of the disappearance of Edmund Yarde on October 21, 1979. Edmund Yarde was covered by an Employee Welfare Benefit Plan issued by Pan American Life Insurance Company and maintained by his employer, Georgetown Steel Corporation. The life insurance benefit provided by the plan was $8,000.00 upon the death of a covered employee with Edmund Yarde's job classification.

This action was brought in South Carolina Circuit Court by Erskine Yarde, the brother of Edmund Yarde and the sole heir of Rosamond Yarde, who was the named beneficiary of Edmund Yarde's death benefit. Pan American Life Insurance Company ("Pan American Life") removed the action based upon the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* Plaintiff was granted leave to amend his complaint to add Georgetown Steel Corporation ("Georgetown Steel") and

Georgetown Industries, Inc. ("Georgetown Industries") as additional defendants.

Plaintiff seeks the principal amount of the life insurance benefit; interest on the principal amount from October 21, 1979; the penalty for failure to supply information as provided by ERISA Section 502(c), 29 U.S.C. § 1132(c); and, attorney fees and costs as provided by ERISA Section 502(g), 29 U.S.C. § 1132(g).

Defendants deny that they are responsible for paying the death benefit because (1) Plaintiff is not a beneficiary as defined by ERISA, (2) the proof of loss was not timely made, and (3) the action was not timely commenced under the terms of the plan. Alternatively, Defendants assert that, if the death benefit is due, interest, if any, should only be awarded from the date Plaintiff provided a presumptive death certificate as proof of the claim.

The case was tried before the Court, sitting without a jury, on September 13, 1993. Having carefully considered the testimony and exhibits admitted into evidence and the arguments of counsel, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52(a), FRCP.

## II. FINDINGS OF FACT

A. On or about October 21, 1979, Edmund Yarde disappeared under circumstances that suggested foul play.

B. At the time Edmund Yarde disappeared, he was employed by Georgetown Steel Corporation and was covered by a Group Benefit Plan issued by Pan American Life to Georgetown Industries. The plan provided for the payment of $8,000.00 upon due proof of death of a covered employee with Edmund Yarde's classification.

C. Georgetown Industries (then known as Korf Industries, Inc.) was designated as the Plan Administrator. In practice, Pan American Life was de facto administrator and informed participants and beneficiaries of its decisions through the personnel office of Georgetown Steel.

D. Rosamond Yarde, the mother of Edmund Yarde and Erskine Yarde, was named by Edmund Yarde as his beneficiary under the Group Benefit Plan. Rosamond Yarde died on January 18, 1980. Rosamond Yarde's will, which was executed on October 23, 1977, devised all of her property to Edmund and Erskine Yarde. Plaintiff was the sole surviving heir of Rosamond Yarde.

E. Plaintiff's representative contacted Georgetown Steel to determine the actions necessary to collect the life insurance benefit under the Employee Benefit Plan. Georgetown Steel informed Plaintiff's representative that he should initiate a claim after the seven year period for presumption of death had elapsed.

F. In 1986, Plaintiff's representative again contacted Georgetown Steel and requested payment of the benefits under the Employee Benefit Plan. As a result of that request, Georgetown Steel submitted a written death claim to Pan American Life.

G. Pan American Life requested that Plaintiff provide evidence that Edmund Yarde had not returned to the Netherlands Antilles, where his mother had lived. On April 8, 1988, Plaintiff satisfied this request with an affidavit of the local police chief of Curacao, Netherlands Antilles.

H. Pan American Life through Georgetown Steel requested evidence of the heirs of Rosamond Yarde. On October 2, 1990, copies of the death certificate of Rosamond Yarde and an affidavit setting forth her heirs was submitted to Georgetown Steel.

I. In December of 1990, Pan American Life requested that Plaintiff obtain a death certificate for Edmund Yarde.

J. Plaintiff brought an action in the South Carolina Court of Common Pleas to obtain a presumptive death certificate. By an Order dated April 25, 1991, the South Carolina Department of Health and Environmental Control was directed to issue a death certificate for Edmund Yarde.

K. On April 30, 1991, the South Carolina Department of Health and Environmental Control issued a death certificate establishing Edmund Yarde's date of death as October 21, 1979.

L. By a letter dated May 23, 1991, Pan American Life tendered payment of $8,037.05

to Plaintiff. This represented the $8,000.00 death benefit plus interest from the date of the issuance of the presumptive death certificate through the date of payment.

M. By a letter dated May 28, 1991, Plaintiff's representative declined the tender and returned the check because the tender did not include interest for the period from October 21, 1979 to April 30, 1991.

N. By a letter dated June 11, 1991, Pan American Life responded that it would not pay any additional interest and that the claim might not have to paid at all as a result, among other reasons, of the delay in the filing of the claim.

### III. CONCLUSIONS OF LAW

#### A. Standing

■ Plaintiff commenced this action in the South Carolina Circuit Court. Pan American Life removed the action asserting that ERISA conferred jurisdiction upon the United States District Court. Defendants assert that Plaintiff is not a beneficiary as defined by 29 U.S.C. § 1002(8) and therefore Plaintiff lacks standing to bring an action under ERISA § 502(a), 29 U.S.C. § 1132(a). Defendants further assert that this Court does not have subject matter jurisdiction over this action, because it was brought by a plaintiff who lacks standing.

There has been much discussion of standing to sue under ERISA. Section 502 of the Act provides that "a civil action may be brought by a *participant* or *beneficiary* ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Erskine Yarde is neither a participant [1] or a beneficiary.[2] Nevertheless, as the sole heir of the deceased beneficiary, Rosa-

mond Yarde, he is ultimately entitled to the death benefit of his brother, Edmund Yarde. Thus, the question that arises is whether Erskine Yarde has standing to sue for the benefits due to Rosamond Yarde, despite the fact that he does not fit in the narrow class of "participant or beneficiary." The answer is yes. A thorough inquiry into legal precedent and the facts of this case leads to this conclusion.

There is a continually-developing split among the circuits concerning whether the list of parties with standing in 29 U.S.C. § 1132(a) should be interpreted broadly or narrowly. In 1982, the Ninth Circuit held that standing to bring an action under ERISA is not limited to the parties enumerated in 29 U.S.C. § 1132. *Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982). The court developed a three-part test for implied ERISA standing, under which a "non-enumerated" party—not a participant or beneficiary—could bring an action if the plaintiff (1) suffered an injury in fact, (2) fell arguably within the zone of interests protected by the statute, and (3) showed that the statute itself does not preclude suit. *Fentron* at 1305.

In 1983, the Second Circuit explicitly rejected "non-enumerated party" standing in holding that a pension plan plaintiff lacked standing under 29 U.S.C. § 1132(a). *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2nd Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983). The Fifth Circuit similarly rejected the Ninth Circuit's "non-enumerated party" theory, stating that "[w]here Congress has defined the parties who may bring a civil action founded on ERISA, we are loathe to ignore the legislature's specificity." *Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286 (5th Cir.1988). However, the Fifth

---

**1.** 29 U.S.C. § 1002(7) states: "The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."

**2.** 29 U.S.C. § 1002(8) states: "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."

Circuit embraced the doctrine of "derivative standing," which allows certain parties who lack "independent standing" as 29 U.S.C. § 1132(a) enumerated parties to nevertheless sue under that section.[3] *Hermann Hospital* at 1289–90. Accordingly, the *Hermann Hospital* court determined that a hospital which provided health care benefits to a deceased beneficiary "would have standing to sue in federal court as an assignee of a plan beneficiary under 29 U.S.C. § 1132(a)."[4] *Id.* at 1290.

A number of courts followed *Misic*'s and *Hermann Hospital*'s lead in holding that a provider of medical services had derivative standing under ERISA as an assignee of a participant's or a beneficiary's benefits. In *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698 (7th Cir.1991), the Seventh Circuit held that a chiropractor had derivative standing under ERISA as the assignee of a plan participant. In *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1277–78 (6th Cir.1991), the Sixth Circuit stated that a "health care provider may assert an ERISA claim as a 'beneficiary' of an employee benefit plan if it has received a valid assignment of benefits." *Id.* at 1277.

Several courts have used the derivative standing theory to allow a personal representative of a beneficiary or participant to sue under ERISA. In 1991, a Louisiana district court held that a succession representative of a participant, who stood in the shoes of the participant, had derivative standing just as an assignee would.[5] *James v. Louisiana Laborers Health & Welfare Fund*, 766 F.Supp. 530 (E.D.La.1991).

In 1993, an Illinois district court held that the sole trustee of deceased beneficiary's trust had derivative standing to seek recovery of the beneficiary's pre-death health benefits. *Cottle v. Metropolitan Life Insurance*

*Co.*, 1993 WL 8201 (N.D.Ill.1993). In language relevant to the case at hand, the court held that:

> To allow plaintiff to sue derivatively on behalf of the deceased beneficiary promotes ERISA's clear policy of 'protect[ing] ... the interests of participants in employee benefit plans and their beneficiaries.' ... In the instant case, both the participant, Henry Irwin, and the beneficiary, Alice Irwin, are deceased. Thus, if plaintiff were denied standing to bring this action, there would be no one left to enforce whatever rights the beneficiary had to medical benefits. An insurance company should not be allowed to deny health benefits merely because the participant and beneficiary of the health plan have died.

1993 WL 8201, *1 (N.D.Ill.1993).

Despite the popularity of derivative standing, particularly where benefits have been assigned to medical service providers, a line of Third Circuit district court cases recognizes neither non-enumerated party or derivative standing. *See Allergy Diagnostics Laboratory v. Equitable*, 785 F.Supp. 523, 527 (W.D.Pa.1991) ("[s]tanding under ERISA does not extend to assignees of participant beneficiaries because Congress simply made no provision in 29 U.S.C. § 1132(a) for unenumerated persons to sue"); *see also Health Scan Ltd. v. Travelers Insurance Co.*, 725 F.Supp. 268 (E.D.Pa.1989). These cases follow the Third Circuit's decision in *Northeast Department ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147 (3d Cir.1985), that a pension fund had no standing, regardless of whether it was suing on a beneficiary's behalf as "assignee or subrogee." *Id.* Note, however, that the Third Circuit found

---

**3.** The Ninth Circuit had also employed the derivative standing theory in 29 U.S.C. § 1132(a) suits, reasoning that assignees "stood in the shoes" of their beneficiary-assignors and therefore were entitled to sue under ERISA. *Misic v. Building Service Employee's Health & Welfare Trust*, 789 F.2d 1374 (9th Cir.1986).

**4.** The Fifth Circuit remanded the case for the district court to determine whether the alleged assignment was valid.

**5.** It may have been unnecessary to employ a derivative standing analysis for a personal representative, since earlier cases such as *Estate of Sheppard v. Caterpillar, Inc.*, 658 F.Supp. 729 (C.D.Ill.1987), had assumed, without discussion of reasoning, that a participant/beneficiary's estate had standing under 29 U.S.C. § 1132(a).

in *Northeast Department ILGWU* that the beneficiary had not in fact made an assignment to the plaintiff, and some courts in that circuit have since held that a valid assignee has standing. *See, e.g., Northwestern Institute of Psychiatry, Inc. v. Travelers Insurance Co.*, 1992 WL 236257 (E.D.Pa.1992); *Winter Garden Medical Center v. Montrose Foods Products of PA, Inc.*, 1991 WL 124577 (E.D.Pa.1991) (assignee of employee's health benefits had derivative standing to sue insurer under ERISA).

Most cases that address ERISA standing deal with health benefits. However, a New York district court confronted ERISA standing in the context of death benefits in *Rovira v. American Telephone & Telegraph Co.*, 817 F.Supp. 1062 (S.D.N.Y.1993). In *Rovira*, the court held that an employee's gay life partner and the partner's children did not have standing to sue for benefits under ERISA, because they could not "make out a 'colorable claim' that they [we]re beneficiaries under the Plan." *Id.* at 1069. The court evaluated the standing of these supposed *beneficiaries* using the "colorable claim" analysis offered by the Supreme Court for *participants*. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989).

While the Fourth Circuit has yet to consider the scope of 29 U.S.C. § 1132(a), it has noted that "most of our sister circuits have limited federal jurisdiction to the suits by the entities specified in the statute." *Provident Life & Accident Insurance Co. v. Waller*, 906 F.2d 985 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). The Fourth Circuit in *Provident* quoted the United States Supreme Court's statement that "[t]he express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties ... as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes." *Id.* at 987–88, quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 21, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983).

To summarize the state of the law this Court faces in determining whether Erskine Yarde is a beneficiary:

* The Ninth Circuit broadly construes 29 U.S.C. § 1132(a)'s "participant or beneficiary" under its "non-enumerated person" standing theory.

* The Fifth, Sixth, and Seventh Circuits strictly construe the two narrow classes of claimants in 29 U.S.C. § 1132(a), but allow "derivative" standing, at least in the context of assignees and succession representatives.

* The Third Circuit has rejected both "non-enumerated party" and "derivative" standing, but a number of district courts have employed derivative standing for assignees.

* The Fourth Circuit prefers to "limit[ ] federal jurisdiction to suits by the entities specified in the statute," but cites with approval the Fifth Circuit's *Hermann Hospital* decision, which embraces derivative standing.

This Court adopts the theory of derivative standing to the extent necessary to hold that Erskine Yarde, as sole heir of the deceased sole beneficiary, may bring this action under 29 U.S.C. § 1132(a).

This Court's decision to grant derivative standing to Erskine Yarde is the "only means available to give effect to the goals of ERISA." *Coleman v. Champion International Corp./Champion Forest Products*, 992 F.2d 530, 536 (5th Cir.1993).[6] Rosamond Yarde, the only person designated by Edmund Yarde as a beneficiary, died fourteen years ago in the Netherlands Antilles, three months after Edmund Yarde's disappearance. Since Edmund Yarde's family was forced to wait for a presumptive death certificate before becoming entitled to death benefits, Rosamond Yarde was long dead before this lawsuit could have possibly been initiated. In fact, since Rosamond Yarde died before Edmund Yarde was declared dead, there is some argument that the plan's mech-

---

**6.** In *Coleman*, the Fifth Circuit found that a sole heir of a participant did not have standing. While the *Coleman* court analyzed and rejected the heir's potential ERISA standing under four standing theories, it did not address whether the heir could have sued under a derivative standing analysis.

anism for a beneficiary who predeceases the participant should have applied. In that event, the participant's death benefits would have been payable to the participant's estate. However, Defendants did not treat this case as a predeceasing beneficiary situation, but rather agreed, in a 1990 letter to Erskine Yarde's counsel, to remit the death benefit since no other requests for payment had been made. (Pl.'s Ex. 6.) Therefore, to ensure fairness in the odd circumstances of this case, we will allow Erskine Yarde, as sole heir of the beneficiary who died in 1980, to maintain this action for the collection of benefits.

## B. Timeliness of Plaintiff's actions

Although Defendants allege numerous affirmative defenses, only the timeliness of Plaintiff's actions were argued at trial. Defendants suggest (1) that Plaintiff did not timely submit proof of his claim and (2) that Plaintiff did not timely file the present lawsuit.

### (1) Timeliness of proof of claim

■ The plan provides that proof of loss must be furnished within ninety days following the date of loss, but that a "claim will still be considered if it was not reasonably possible to furnish proof within the time required and that the proof was furnished as soon as reasonably possible." (Pl.'s Ex. 1 at 43).

Defendants contend that the latest time at which plaintiff could have been required under the terms of the plan to provide proof of loss was January 19, 1987. This date is derived by adding ninety days to the seven year anniversary of the disappearance of Edmund Yarde.

Defendants' contention ignores that the plan provides for a reasonable period of time to furnish proof of loss when circumstances frustrate a claimant's efforts. Over the course of several years, Plaintiff provided various documents requested by Defendant to prove the loss: April 1988—proof that Edmund Yarde did not return to the Netherlands Antilles; October 1990—proof of Rosamond Yarde's death; April 1991—certificate of presumptive death. At trial, Defendants did not even argue that Plaintiff, a citizen

and resident of the Netherlands Antilles, failed to furnish proof as soon as was reasonably possible.

This Court concludes that Plaintiff complied with the terms of the plan and provided proof of loss within a reasonable period of time under the circumstances of this case.

### (2) Timeliness of lawsuit

■ The Plan provides that no action may be brought to recover on the group policy unless brought within three years from the expiration of the time within which proof of loss is required to be furnished. (Pl.'s Ex. 1 at 43).

Defendants contend that this action had to be filed by January 19, 1990. This date is derived by adding three years to January 19, 1987, the date which Defendants contend was the deadline for submitting proof of loss. Defendants seek judgment because Plaintiff filed this lawsuit on March 3, 1992, more than two years after the alleged deadline.

This Court has already rejected Defendants' contention that January 19, 1987 was a fixed deadline for submitting proof of loss. Plaintiff filed this lawsuit less than one year after the South Carolina Department of Health and Environmental Control issued Edmund Yarde's presumptive death certificate on April 30, 1991. Therefore, Defendants' second argument also must fail.

## C. Plaintiff's entitlement to the life insurance benefit due upon proof of Edmund Yarde's death

■ Defendants admit that Erskine Yarde was covered by the Group Benefit Plan issued by Pan American Life to Georgetown Industries. Defendants further admit that the Group Benefit Plan provided for the payment of $8,000.00 upon due proof of death of a covered employee in Edmund Yarde's job classification. The Circuit Court of the State of South Carolina found that Edmund Yarde died on October 21, 1979, and the South Carolina Department of Health and Environmental Control issued a death certificate stating that Edmund Yarde's date of death was October 21, 1979.

Rosamond Yarde, the mother of Edmund and Erskine Yarde, was named by Edmund Yarde as his beneficiary under the Group Benefit Plan. Defendants admit Rosamond Yarde died on January 18, 1980 and that the Plaintiff is the sole heir of Rosamond Yarde. No person other than Plaintiff has asserted a claim to the life insurance benefit.

This Court concludes that Plaintiff is entitled to the $8,000.00 life insurance benefit provided by the Group Benefit Plan.

## D. Plaintiff's entitlement to interest on the life insurance benefit

■ The terms of the life insurance policy require "due proof of death" before payment of benefits. (Pl.'s Ex. 1 at 14). This "proof of death" requirement exists to protect insurers from fraudulent or unsubstantiated claims for payment. *Cf. Fidelity Mutual Life Ass'n v. Mettler*, 185 U.S. 308, 22 S.Ct. 662, 46 L.Ed. 922 (1902); *Fidelity Mutual Life Ins. Co. v. Clark*, 203 U.S. 64, 27 S.Ct. 19, 51 L.Ed. 91 (1906) (insurer paid death benefits to the beneficiaries of an insured who had disappeared several years previously; the "deceased" insured was subsequently found alive by the insurance company). From the viewpoint of an insurer, a death presumption that has not been legally substantiated is not sufficient evidence to insure that the payment of benefits is proper. *See McKee v. Sullivan*, 903 F.2d 1436 (11th Cir. 1990) (where claimant was seeking federal survivor's benefits pursuant to a regulation that required a "report or finding" of death, court held that a National Transportation Safety Board report of presumptive death was insufficient evidence on which to base a payment of benefits.) Thus, when a person disappears and no legal proof of death is immediately available, a beneficiary is forced to wait the prescribed period of time until a certificate of presumptive death is obtainable through the judicial system.

Georgetown Steel informed Plaintiff in 1982 that the claim could be "initiated" when "the seven year period has elapsed and the legal declaration of death has been made." (Pl.'s Ex. 2). If the claim could not be *initiated* until after the seven year period had passed and the declaration of death pro-

vided, then certainly the benefits did not become payable until the same events had transpired. Thus, the benefits did not first become payable until the legal declaration of death was furnished. Plaintiff cites *Sweet v. Consolidated Aluminum Corp.*, 913 F.2d 268 (6th Cir.1990), for the proposition that prejudgment interest accrues from the first date that the funds could have been paid. This Court agrees. Since the funds could have been paid only when the insurance company received due proof of death, which in this case was a presumptive death certificate, interest accrued from April 30, 1991.

■ The remaining issue concerns the date the accrual of interest terminated in this case. Pan American Life tendered a check in the appropriate amount on May 23, 1991, and Plaintiff rejected the check. Pan American Life argues that it should not be liable for the interest that could have accrued to Plaintiff had Plaintiff initially accepted the check. While it is true that Plaintiff would not be seeking this interest had he accepted the check from the outset, it is also true that Pan American Life had use of the money that belongs to Plaintiff and earned interest on money that Plaintiff would have earned but for his good-faith dispute over the amount of benefits to which he was entitled. *See Lorenzen v. Employees Retirement Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228 (7th Cir.1990). Therefore, this Court finds that Plaintiff is entitled to prejudgment interest from May 28, 1991, the date the check was rejected.

## E. Penalty for failure to comply with Plaintiff's requests for information

■ Plaintiff asks that Pan American Life be penalized for failure to provide information that Plaintiff requested. Subsequent to Pan American's letter of June 11, 1991, in which Pan American responded to Plaintiff's rejection of the tendered check, Plaintiff requested information relating to administrative review of a denied claim, pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503.1. While ERISA requires that a plan administrator supply requested information after the denial of a claim, information pertaining to administrative review of denied claims is not

required to be furnished when there has been no denial. Here, Plaintiff views Pan American's letter of June 11, 1991 as a denial; however, the claim had already been accepted and paid in the face amount at that time. Thus, Pan American's June 11th letter cannot constitute a denial and Defendants were under no duty to furnish the information requested.

### F. Attorney fees

 In *Reinking v. Philadelphia American Life Insurance Co.*, 910 F.2d 1210, 1217–18 (4th Cir.1990), the Fourth Circuit Court of Appeals adopted a five factor test to guide the exercise of discretion in awarding attorneys' fees under ERISA. The five factors are:

1) degree of opposing parties' culpability or bad faith;

2) ability of opposing parties to satisfy an award of attorneys' fees;

3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

5) the relative merits of the parties' positions.

Since this Court finds that no interest accrued on the death benefit prior to 1991 and that Pan American did not wrongfully fail to provide information, it cannot be said that Defendants acted in bad faith. Furthermore, although Defendants have the ability to satisfy an award of attorney fees, such award would not deter other persons from similar actions, because the actions were justified. The party requesting attorney fees sought to benefit one individual rather than all participants or beneficiaries of an ERISA plan, and the legal question raised was of average significance. Lastly, the relative merits of the case weigh in favor of Defendants, since the bulk of relief requested was denied.

Therefore, this Court denies Plaintiff's request for attorney fees.

### IV. CONCLUSION

Based upon the foregoing, it is

ORDERED that judgment be entered for Plaintiff against Defendants Pan American Life Insurance Company, Georgetown Industries, Inc., and Georgetown Steel Corporation, jointly and severally, in the sum of eight thousand and no/100 dollars ($8,000.00), plus interest from April 30, 1991 through May 23, 1991 in the amount of thirty seven and five/100 dollars ($37.05), plus interest from May 28, 1991 at the rate prevailing for prejudgment interest at that time;

ORDERED that Plaintiff's demand for administrative penalties and attorney fees be DENIED.

AND IT IS SO ORDERED.